RIPLEY *v.* WILSON.*

(Division B. Oct. 5, 1925.)

[105 So. 446. No. 25040.]

1. MUNICIPAL CORPORATIONS. *Traveler held not guilty of negligence solely because he turned from proper side in trying to avoid collision.*

Where a person, traveling on the proper side of the highway at the point of intersection with another highway, in trying to avoid a

collision at such intersection turned from the proper side of the highway to the opposite side for the purpose of avoiding a collision, he is not guilty of negligence solely by such act.

2. MUNICIPAL CORPORATIONS. *Presumption of negligence from violation of law of road may be rebutted by circumstances showing excuse for deviation.*

    The law of the road is not conclusive on the question of negligence, but is only *prima-facie* evidence of negligence, and it is permitted to show circumstances excusing conduct and rebutting the presumption of negligence. A deviation from the rule is sometimes necessary, and where the deviation is made to avoid accident, apparently necessary to avoid same, it does not constitute negligence.

3. MUNICIPAL CORPORATIONS. *Negligence in collision at intersection held question for jury.*

    In such case it is error to grant a peremptory instruction based upon such deviation. The facts in this case examined, and *held*, to be a question for the jury.

*Headnotes 1. Motor Vehicles, 28 Cyc., p. 37; 2. Motor Vehicles, 28 Cyc., p. 46; 3. Motor Vehicles, 28 Cyc., p. 49.

APPEAL from circuit court of Monroe county.

HON. C. P. LONG, Judge.

Action by Tilman Wilson, by next friend, J. B. Wilson, against G. D. Ripley. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Leftwich & Tubb,* for appellant.

It was plain error for the court below to grant a peremptory charge on the *question of liability.* Ripley's evidence, if believed by the jury, in any particular, tended to make a defense, and the peremptory charge was improper. We recognize the full force of the law of the road, as found in section 4412, Code of 1906; section 7092, Hemingway's Code. We also recognize the full force and effect of section 5781, Hemingway's Code, chapter 143 on Motor Vehicles; but after all this is done, when an emergency occurs at a street crossing, or when

danger of a collision arises, the law of the road is not the unbending test.

It does not lie in the mouth of the appellee, Wilson, to say that defendant Ripley was liable because he was on the wrong side of the road when the collision occurred, when it is undisputed, according to the defendant's testimony, that Ripley never would have been on the wrong side of the road but for the fact that he was exerting a strenuous effort to avoid a collision with Wilson's rapidly moving car, coming without warning. This court has held that running an automobile at an illegal or forbidden rate of speed in a city, as was in Amory, is negligence *per se.* *Ullman* v. *Pistole,* 115 Miss. 485.

Our court, in commenting on section 4412, Code of 1906, section 7092, Hemingway's Code, giving the law of the road, justifies its violation where it appears necessary to take the other side. The rule is not an inflexible one, and circumstances may arise which may make it necessary to violate it. *Pallotta* v. *Jackson Light & Traction Co.,* 107 Miss. 61, 64 So. 938.

This same question has arisen in many jurisdictions. In many courts, in fact we may say courts everywhere, the mere fact that the defendant was on the wrong side of the road is not the sole test of liability. Huddy on Automobiles (5th Ed.), sections 268, 269, 270, 271, 272, 273 and 274; *Bragdon* v. *Kellog,* 6 A. L. R. 669, and note at 676; *Allen* v. *Schultz,* 6 A. L. R., note at 680; *Pilgrim* v. *Brown* (1914), 168 Iowa, 177, 150 N. W. 1. See also 24 A. L. R. 1308; *Kearney* v. *Castellotti* (1921), 55 Cal. App. 541, 203 Pac. 1029.

It is useless, of course, to cite authorities to the effect that it is error to grant a peremptory charge when the evidence conflicts. *Davis* v. *George,* 87 So. 274.

Even if it be admitted, for argument's sake alone, that Ripley, in turning to the right to avoid a collision made a mistake, and it would have been safer to have taken some other course, yet in this emergency produced by the careless driving of the plaintiff, Ripley is

not held for the negligence. In such emergencies, the defendant is held only to his best judgment, and it is for the jury to say whether or not his conduct in the prem-ises was reasonable. We submit it is beyond controversy that this case should have been submitted to the jury on proper charges from the court.

So many questions are integrated into the solution of the question of negligence—it is so necessary to carefully examine all the circumstances making up the situation in each case—that it must be a rare case of negligence which the court should take from the jury. *Bell* v. *Southern Railway Co.*, 30 So. 821; *Laurel Merc. Co.* v. *Mobile & Ohio Ry. Co.*, 87 Miss. 675, 40 So. 259.

Where the facts are controverted, the question whether the plaintiff is barred by reason of contributory negli-gence is always for the determination of the jury. *Vicks-burg, etc., R. R. Co.* v. *McGowan*, 62 Miss. 682; *Nesbitt* v. *Greenville*, 69 Miss. 22; *Alabama, etc., R. R. Co.* v. *Lowe*, 73 Miss. 203.

Where even the facts are conceded, but the inference in regard to negligence is still doubtful, depending upon the general knowledge and experience of men, then the question of negligence is for the jury and not the court. *Southern R. R. Co.* v. *Floyd*, 55 So. 287.

Generally the fact as to whether an accident would or-dinarily happen, had due care been exercised by defend-ant should be left to the determination of the jury. *Ala-bama, etc., R. R. Co.* v. *Groome*, 52 So. 703. See also *Dent* v. *Town of Mendenhall*, 104 So. 82. Very palpably here the trial court had no right to take the question from the jury.

*J. O. Prude, D. W. Houston, Sr.* and *D. W. Houston, Jr.*, for appellee.

If defendant was negligent and his negligence proxi-mately contributed to the injuries this young man suf-fered, then his liability is fixed, and the court was right

in granting a peremptory instruction, *even though the plaintiff himself* may have been guilty of negligence, and such negligence as contributed to his injuries. Section 5781, Hemingway's Code, absolutely makes it the duty of drivers of vehicles to keep to the right of street intersections.

Did the plaintiff comply with this provision of the law of the road? There is no testimony whatever in the record to show that he did not do so, therefore, no dispute, conflict of testimony or controverted question of fact as to the plaintiff complying with this requirement.

Did the defendant comply with this provision of the law of the road? The plaintiff testified that when he first saw Mr. Ripley he was on the right-hand side of the road, and that when Mr. Ripley saw him he got faster and tried to beat him across the street, and in his attempt to do so that he veered, or turned his car to the left-hand side of the road, and struck him on the left-hand side of the road.

Certainly, it is plain to anyone of common experience and intelligence that he should, and could, have stopped his car and avoided this collision. Even if he had slackened the speed of his car, it is clear to the ordinary mind that running at the rate of speed which he says that plaintiff and he were running that the car driven by the plaintiff would have cleared the intersection of these two streets in ample time for the defendant to have passed to the right and behind the plaintiff, as the law required him to do, without the collision that occurred.

But what does the defendant do under such circumstances, as testified to by the other witnesses and as admitted by himself? He speeds up his car and turns or veers to the left-hand side of the street in an attempt to beat the plaintiff across the intersection of said streets, and in doing so, pushes the plaintiff as far on the right-hand side of Fourth street as plaintiff could have gotten and runs forty-five paces, or one hundred and thirty-five feet. He admits he could have stopped within

fifty or sixty feet, thus the collision could have been avoided if he had stopped, or even attempted to stop, or slackened the speed of his car, which would have given plaintiff ample opportunity to have cleared the intersection.

Certainly, the lower court had a right, under all of the facts and circumstances developed by this record where they were undisputed and uncontroverted, as we have shown they were, to decide that the defendant was guilty of negligence; and that this negligence was the proxi-mate cause of the injuries suffered by the plaintiff; and to instruct the jury peremptorily to find for the plain-tiff; instructing them further that if they believed from the evidence that both plaintiff and defendant were negli gent, then, in that case, the damages, if any, suffered by the plaintiff should be diminished in proportion to the amount of negligence for which plaintiff was respon-sible, all as shown by the evidence, which the court did do by granting defendant the instruction he did grant. *Allen* v. *Schultz,* 6 A. L. R. 676-690, cited by counsel, is really in our favor.

*Allen* v. *Schultz,* also distinguishes *Sheffield* v. *Union Oil Co.,* 82 Wash. 386, 144 Pac. 529, from it, showing that the Sheffield case was one as to the contributory negligence of the injured party, just as was *Pilgrim* v. *Brown* (1914), 168 Iowa 177, 15 N. W. 1, quoted by coun-sel.

The same distinction applies to the instant case. See 27 A. L. R. 1203; *Alamo Iron Works* v. *Prado,* 120 Tex. Civ. App. —, 220 S. W. 282; *Simonson* v. *Huff* (1923, Wash.), 215 Pac. 49.

The latest utterance of our court on such accidents seems to be the case of *Fondren,* 122 Miss. 248, 84 So. 188, where the court specifically held that where a person was driving an automobile upon a public highway and on meeting another automobile failed to turn to the right and by reason thereof- collided with the other vehicle, which was on the proper side of the road, the offend-

ing party was guilty of negligence, and was liable for the injury inflicted upon the injured vehicle.

Argued orally by *Geo. J. Leftwich,* for appellant, and *D. W. Houston, Jr.,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant for injuries resulting from a collision of two motor vehicles, one driven by the appellant and the other by the appellee. The collision took place at an intersection of two streets in the town of Amory, Miss. The appellant was traveling from east to west on one street, and the appellee from north to south on another street. Both vehicles were on the proper side of the street. There is a dispute as to who was at fault in approaching the crossing. The actual collision took place at the southwest corner of the intersection, the appellant having turned from the north side of the street to the south side. This, of course, left the appellee on the proper side of the street where he was traveling. The court below gave a peremptory instruction of liability against the appellant, and for the purposes of this decision the correctness of that action must be determined by the appellant's version of the facts. He testified that he was going on the proper side of the street at a speed of from six to ten miles an hour; that a building in the northeast corner of the intersection obstructed the view until he was near the point of collision; that when he heard the roar of the appellee's car and looked, he saw it was going at a high rate of speed, to use his expression—"about as wide open as it could." He refused to state the speed definitely, but said appellee's car was traveling rapidly, and that he saw that if he stopped his car a collision would occur, and that he accelerated his speed and swerved to the south side to avoid a collision, and that his car was struck by appellee's car on the side or door of the car, which was bent and the running

board crushed under the car; that the appellee's car was injured on the hood and in front, and the glass broken as it turned over on the side.

"The corner of this house opens sufficiently for me to see around here; he was so close to me that I knew if I put on my brakes on my car, it would stop it where he would cross this intersection; so with the same glance my common sense showed me that he was trying to make a west turn on this street. My instinct, as a chauffeur, told me that with the speed he was going I was bound to hit the car he was driving, so I pulled over here to give him as much room as possible; the obvious thing — (Objection.)

"By the Court: Well, don't argue the case.

"Well, instead of taking the opening here, I never made up my mind whether he changed his mind, or subconsciously he made another turn here, when feeling that his car was going to turn over; anyway he hit me in the middle of the Ford coupé I was driving, in the middle of the door; it killed the engine on my car, but I threw it into low about this time; the post and trees on this vacant lot were as close to the sidewalk as they could get, and I got in there in low and went right back to the car that had overturned."

Appellant further testified that his car was in good condition and it would take about fifty feet for it to stop, going from six to ten miles an hour. The man who repaired appellant's car corroborated his statement about the injury to the two cars.

The court, in instructing peremptorily as to liability, seemed to base his ruling upon the fact that appellant was on the wrong side of the street or road at the time of the collision, and upon the fact that the statute of the state directs parties to keep on the right-hand side of the center of the intersection of the street in crossing, and in making turns to keep on the right-hand side of such point. Generally speaking, a failure to observe the statute is negligence *per se,* but we do not think the stat-

ute was meant to prevent a person in a case of emergency and when in danger of a collision from turning and going upon the wrong side of the street. In such case, the paramount duty of the driver is to avoid injury if it can be done; and if it reasonably appeared to the appellant, judging by appearances at the time, that turning would prevent, or would be likely to prevent, the injury, that his duty would be to turn, even though it threw him on the wrong side of the road.

In Huddy on Automobiles (5th Ed.), section 270, page 324, it is said: "The violation of the law of the road is not conclusive on the question of the violator's negligence; it is only *prima-facie* evidence of his negligence, and he is permitted to show circumstances excusing his conduct and rebutting the presumption of negligence. He may show the surrounding circumstances indicating a necessity for turning to the left side of the highway. A deviation from the rule is sometimes necessary in the crowded streets of a metropolis. And, in order to allow street railway passengers to alight, it is said that the driver of a motor vehicle may use the left side of a street. But the fact that, on account of the darkness, the driver was unable to see the vehicle he was approaching does not excuse his conduct in driving on the wrong side."

Under our statutes (section 5781, Hemingway's Code), the questions of negligence are generally for the jury, and the particular facts involved in this case, in our opinion, should have gone to the jury, and the jury should have determined under appropriate instructions the question of negligence. If we accept the appellant's evidence as being true, we think no recovery should be had, as his evidence would, in our opinion, exonerate him if fully believed by the jury.

The judgment of the court will be reversed, and the cause remanded.

*Reversed and remanded.*